# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Matthew Starnes, | Civil No. 09-2491(MJD/SRN) |
| Petitioner, | |
| v. | **REPORT & RECOMMENDATION** |
| State of Minnesota | |
| Defendant. | |

Matthew Starnes, 5950 East River Road, Fridley, Minnesota 55342, Pro Se.

Kathryn Timm, Anoka County Attorney's Office, 2100 Third Avenue North, Anoka, Minnesota 55303, for Defendant

SUSAN RICHARD NELSON, United States Magistrate Judge

This matter comes before the undersigned United States Magistrate Judge on the Petition of Matthew Starnes for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1). The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a). For the reasons discussed below, the court recommends that the petition be denied and that this action be dismissed with prejudice.

## I.     FACTUAL AND PROCEDURAL HISTORY

Following a February 2007 jury trial in Anoka County District Court, Petitioner Matthew Starnes was convicted on charges of attempted robbery, assault and the illegal possession of a firearm. In April 2007, the Anoka County District sentenced Petitioner to a term of 60 months. At the time he filed the instant Petition, Petitioner was in the custody of Respondent, the State of Minnesota, at the Minnesota Correctional Facility - Rush City ("MCF Rush City"). He completed his sentence in February 2010 and was released.

A.  **Factual Background**[1]

Shortly after midnight on September 11, 2006, "P.S.," a restaurant employee in Columbia Heights, Minnesota, stepped outside of the restaurant he was closing for the night and found a masked man sitting in a chair approximately five to ten feet away. When the man got up and approached him with a silver revolver in his hand, P.S. returned inside the restaurant door, which locked behind him. Minnesota v. Starnes, No. A07-1365, 2008 WL 5057083, *1 (Minn. App. Dec. 2, 2008), rev. denied, (Minn. Feb. 25, 2009). The masked man pounded on the door, gun in hand, and yelled several times, "Open the f----ing door." The man left, returned, then left again, heading to the south.

After having received a 911 call from P.S., police arrived and P.S. provided a description of the suspect as a black male, with black hands or gloves, a black mask covering his face, a hat, a dark-colored hooded sweatshirt with the hood pulled up, between 5'6" and 5'8" tall and weighing between 130-150 pounds. Id.

At approximately 12:30 p.m., a dispatcher alerted law enforcement of the attempted robbery, and Officer Harvey was called to set up a perimeter in the area. Driving in his squad car near the restaurant, Officer Harvey observed a black male, later identified as Matthew Starnes, walking "tight up against" a row of apartment buildings located one and a half blocks away from the restaurant. Id. In Officer Harvey's opinion, Starnes appeared to be unfamiliar with the area. Although Starnes initially hesitated upon seeing Officer Harvey, he approached the squad car.

Officer Harvey asked Starnes to explain what he was doing, to which Starnes replied that

---

[1] This Court's recitation of facts is based primarily on the opinion of the Minnesota Court of Appeals in Minnesota v. Starnes, No. A07-1365, 2008 WL 5057083 (Minn. App. Dec. 2, 2008), rev. denied, (Minn. Feb. 25, 2009).

he was visiting someone in the apartment. Officer Harvey then placed his hand on Petitioner's chest to determine if he had an elevated heart rate. The officer also noticed burdocks, or thistles, on Petitioner's clothing. Upon further questioning, Petitioner indicated that he had been visiting a friend in the northwest corner of the building. Shortly thereafter, Officer Piehn arrived and stayed with Petitioner while Officer Harvey spoke with residents of the building, determining that no one knew Starnes. Id.

At the restaurant, Officer Boersma and his dog, Rom, arrived and started to track the scent of the suspect. Rom picked up the scent and lost it. As Officer Boersma and Rom approached Officer Harvey's squad car, Rom picked up a scent near some bushes, which contained burdocks similar to those on Starnes's clothing. Rom began digging near a fence by the bushes, spotting a black glove hanging from a branch. Officers discovered another black glove containing a silver revolver inside of it. Authorities later discovered that DNA on the gun matched Petitioner's DNA. Id. at *2.

Between 1:09 a.m. and 1:47 a.m., Officer Harvey detained Petitioner and brought him to a "show-up" identification procedure at the restaurant. P.S. identified him as the culprit, claiming to be 80-90% certain of his identification. Id. Officer Harvey arrested Petitioner and began transporting him to jail when he received a request to return Petitioner to the restaurant for a voice "show-up." Petitioner agreed and at the show-up, after repeating the phrase, "Open the f----ing door," several times, P.S. identified Starnes as the robber. Id. The audio show-up occurred approximately 15 minutes after the visual show-up.

The state charged Starnes with attempted first-degree aggravated robbery, second-degree assault and unlawful possession of a firearm. After discharging his public defender following an omnibus hearing, the court appointed a new attorney as advisory counsel and permitted

Petitioner to reopen the hearing. At the hearing, at Starnes's request, counsel assumed full representation and moved to suppress the visual and audio show-up identifications, the dog-tracking evidence, evidence relating to Officer Harvey's touching of Starnes's chest and the DNA evidence. Id. While the district court granted the motion to suppress evidence related to Starnes's heartbeat, it denied all the other motions and deferred the admissibility of the dog tracking evidence to the trial court's discretion. Id.

At trial, Starnes proceeded pro se with advisory counsel on standby and was found guilty of all charges. Starnes then made several motions, which the district court denied, including a claim of ineffective assistance of counsel at his omnibus hearing. Id. Because Starnes had failed to raise this objection or make any record at the time of the hearing, the district court dismissed this claim. The court also found that Petitioner waived any objection to Officer Harvey's testimony as false by failing to object at the omnibus hearing and failing to cross-examine him at trial. Id.

### B. Procedural Background

Petitioner appealed his conviction to the Minnesota Court of Appeals which affirmed the Anoka County District Court's judgment on December 2, 2008. Starnes petitioned the Minnesota Supreme Court for further review, which was denied on February 25, 2009. See Starnes, 2008 WL 5057083. In his appeal to the Minnesota Court of Appeals, Starnes challenged Officer Harvey's touching of his chest as an unlawful "seizure." Id. at *3. He also challenged the show-up identification procedures and the sufficiency of the evidence. Id. at * 4-6. As to appointed counsel who represented him during the omnibus hearing, Petitioner raised an ineffective assistance claim based on counsel's alleged failure to vigorously cross-examine certain witnesses. (Id. at *7.) The Minnesota Court of Appeals considered Petitioner's claims

4

and affirmed the convictions. Id.

Petitioner filed his Petition for Writ of Habeas Corpus on September 15, 2009, in which he raises the following claims: (1) ineffectiveness of his advisory counsel at the omnibus hearing; (2) admission of illegally obtained evidence at trial; (3) unlawful stop and detention; and (4) judicial misconduct. (Petition, Doc. No. 1.) Starnes's state court conviction became final on March 25, 2009, therefore his Petition was timely filed within the one-year statute of limitations. 28 U.S.C. § 2244(d)(1)(A).

## II. DISCUSSION

### A. Evidentiary Hearing

Petitioner's claims are strictly legal in nature. With respect to issues of credibility, the Court will rely on the record before it and the credibility determinations of the state court. Accordingly, the Court will address Petitioner's claims without an evidentiary hearing.

### B. Grounds of Habeas Relief

Habeas relief is available to a state prisoner if "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas petitioner must be in custody for the conviction or sentence under attack at the time the petition is filed. Maleng v. Cook, 490 U.S. 488, 490-91 (1989). Here, although Petitioner is no longer currently in custody, he was in custody on September 15, 2009, when he filed the instant petition. This Court therefore has jurisdiction to consider his habeas petition.

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) limits habeas review to adjudications that:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

5

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. § 2254(d).

The United States Supreme Court explained the meanings of the "contrary to" and "unreasonable application" clauses in Williams v. Taylor, 529 U.S. 362 (2000). A state court decision is "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law" or "decides a case differently than th[e] [Supreme] Court has on a set of materially indistinguishable facts." Id. at 412-13. A state court decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "A federal court may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Lyons v. Luebbers, 403 F.3d 585, 592 (8th Cir. 2005) (quoting Williams, 529 U.S. at 411).

In addition, when reviewing a state court decision, "a federal court . . . presumes that the state court's factual determinations are correct." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000); see 28 U.S.C. § 2254(e)(1). This deference applies to factual determinations made by state trial courts and state appellate courts. Sumner v. Mata, 449 U.S. 539, 547 (1981). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see Whitehead v. Dormire, 340 F.3d 532, 539 (8th Cir. 2003).

Before filing a federal habeas petition, a petitioner must exhaust his state court remedies by fairly presenting his federal constitutional claims to the highest available state court.

O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). A federal claim is fairly presented when the petitioner refers "to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997) (quoting Myre v. State of Iowa, 53 F.3d 199, 200-01 (8th Cir. 1995) (quoting Kelly v. Trickey, 844 F.2d 557, 558 (8th Cir. 1988))).

Because Petitioner appears to have exhausted his state court remedies by presenting his claims to the Minnesota Court of Appeals and seeking review with the Minnesota Supreme Court, see Starnes, 2008 WL 5057083, the Court addresses his Petition on the merits.

### 1. Ineffective Assistance of Counsel

Petitioner alleges that during the pretrial omnibus hearing, his counsel failed to lodge objections during the testimony of state witnesses – testimony which Petitioner argues was elsewhere contradicted. (Petition at 4.) In his direct appeal, Starnes made the same claim, arguing in more detail that counsel failed to vigorously cross-examine the following witnesses: (1) P.S., regarding allegedly inconsistent descriptions of Starnes; (2) Officer Harvey, regarding the description of the suspect received from the dispatcher; and (3) Officer Piehn, regarding his interpretation of Starnes' statements to Officer Harvey at the time of the seizure. Starnes, 2008 WL 5057083 at *7.

In order to establish ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687 (1984). "Matters of trial strategy and tactics generally do not constitute ineffective assistance of counsel, unless a tactical choice is wholly without reason." Williams-Bey v. Trickey, 894 F.2d 314, 316 (8th Cir. 1990) (finding no ineffective assistance of

7

counsel for failure to cross-examine victim witness on certain subjects), cert. denied, 495 U.S. 936. Matters of trial strategy and tactics do not generally constitute ineffective assistance of counsel, absent a tactical decision wholly lacking in reason. Id. Moreover, "as set forth in Strickland, counsel's 'strategic choices made after thorough investigation are virtually unchallengeable' in a later habeas corpus action." Wells v. Houston, No. 8:09CV113, 2009 WL 4885176, *8 (D. Neb. Dec. 17, 2009) (citation omitted).

A petitioner must demonstrate both prongs of the Strickland test to be entitled to relief and if either prong is unproven, the reviewing court need not analyze the other prong. United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996). The United States Supreme Court has recently addressed the degree of deference due to state court decisions involving ineffective assistance of counsel claims:

> [t]he question "is not whether a federal court believes the state court's determination" under the Strickland standard "was incorrect but whether that determination was unreasonable – a substantially higher threshold." And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

Knowles v. Mirzayance, __ U.S. __, 129 S.Ct. 1411, 1420 (2009) (citations omitted).

Here, the Minnesota Court of Appeals analyzed the actions of counsel under the two-part Strickland test, observing that trial tactics are "inherently discretionary," and holding that Starnes's counsel "effectively cross-examined all witnesses brought by the state" and that there was no showing that counsel's performance fell below an objective standard of reasonableness. Starnes, 2008 WL 5057083 at *8.

Petitioner has not shown that the state court's decision was contrary to or an unreasonable application of established Supreme Court precedent, nor was it based on an unreasonable determination of the facts. The Court therefore recommends that this ground of

habeas relief be denied.

### 2. Admission of Evidence at Trial

Starnes also contends that his conviction was obtained by the use of evidence gained pursuant to an unconstitutional search and seizure. (Petition at 4.) He argued to the Minnesota Court of Appeals that if the evidence of the initial detention, show-up identifications and DNA evidence were suppressed, there remained insufficient evidence to support his convictions. Starnes, 2008 WL 5057083 at *5. The Minnesota Court of Appeals, however, rejected this argument, finding that even without the contested evidence, sufficient evidence remained for the jury to find Starnes guilty beyond a reasonable doubt. Id.

#### a. Show-Up Identifications

Petitioner argues that the trial court "illegally" admitted evidence, including evidence regarding the two show-up identifications. Arguing to the Minnesota Court of Appeals that the visual and audio show-up procedures were unnecessarily suggestive, Starnes also maintained that there was a substantial likelihood of misidentification based on the totality of the circumstances. Id. at *4. Alternatively, Starnes argued that the court should abandon the totality of the circumstances test and simply exclude any identification evidence that became "tainted" by a suggestive procedure. The Minnesota Court of Appeals found that although the identification procedures used by the police were unnecessarily suggestive, there was sufficient indicia of reliability that, on balance, permitted the admission of the identification evidence. Starnes, 2008 WL 5057083 at *5.

In the § 2254 habeas context, federal courts are required to "show a high measure of deference to the factfindings made by the state courts." Sumner, 455 U.S. at 598. Courts apply the following five factors when analyzing a constitutional challenge to the use of a show-up

9

identification procedure: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the time of the identification; and (5) the length of time between the crime and the identification procedure. Neil v. Biggers, 409 U.S. 188, 199 (1972). Applying this five-factor test, the Minnesota Court of Appeals concluded that: (1) P.S. had several minutes to view Starnes at a close distance in reasonably good lighting; (2) P.S. paid close attention to Starnes; (3) P.S. accurately described Starnes's race, clothing, appearance, height and weight; (4) P.S. was 80-90% sure of his identification; and (5) the time between the crime and the show-ups was only about an hour. Starnes, 2008 WL 5057083 at *5.

Here, the district court and appellate court applied the "totality of the circumstances test" pronounced by the United States Supreme Court and adopted in Minnesota, Minnesota v. Ostrem, 535 N.W.2d 916, 921 (Minn. 1995). The state courts' factual determinations, to which this Court must show a high measure of deference, are supported by the record. The Court therefore recommends the denial of this requested ground for relief.

### b. DNA Evidence

Prior to his state court omnibus hearing, Starnes moved to suppress certain DNA testing evidence as fruit of an unlawful interrogation following invocation of his right to counsel. (Notice of Mot. and Mot. to Suppress at 2, Resp. Ex. 1 in Supp. Ans. to Pet. for Writ of Habeas Corpus.) Subsequently, Starnes requested that his advisory counsel withdraw the motion to suppress the DNA evidence. (Mem. Supp. Mot. Suppress at 5, Resp. Ex. 2.) The district court, however, ruled on the issue, finding that the evidence was admissible due to the inevitable discovery doctrine, despite an earlier violation of Starnes' right to counsel. (Findings of Fact,

Conclusions of Law & Order at 7, Resp. Ex. 4.) The trial court noted that the state took a second DNA sample, pursuant to a search warrant, and found that the search warrant was supported by probable cause, independent of any taint to the right to counsel violation. Id.

This issue is arguably before this Court because although he does not directly refer to the admission of the DNA evidence in his Petition, Starnes refers to an earlier request made to the state court for reconsideration of his pretrial motion. (Petition at 4). The pretrial motion included a motion to suppress DNA evidence (Notice of Motion and Motion to Suppress at 2, Resp. Ex. 1), and Starnes appealed the admission of the DNA evidence to the Minnesota Court of Appeals. (App.'s Brief at 40, Resp. Ex. 5.)

The Minnesota Court of Appeals ultimately concluded that even absent the DNA evidence, there was sufficient evidence for a jury to find that Starnes was guilty beyond a reasonable doubt. Starnes, 2008 WL 5057083 at *5. Although the Minnesota Court of Appeals declined to address the DNA evidence in more detail, the Court finds nothing in its holding that is either contrary to, or an unreasonable application of, Supreme Court precedent, nor is it based on an unreasonable determination of the facts. Moreover, Stone v. Powell, 428 U.S. 465 (1976), bars federal habeas corpus review of evidence arguably subject to the exclusionary rule under the Fourth Amendment if there has been a full and fair opportunity to litigate those issues in state court. Such an opportunity was afforded. For all of these reasons, the Court therefore recommends the denial of this ground of requested habeas relief.

### c.     Dog-tracking Evidence

As with the DNA evidence discussed above, this issue is arguably before the Court because Starnes challenged dog-tracking evidence at his pretrial omnibus hearing and he refers to the denial of his suppression motions as a ground upon which he seeks relief in the instant

11

Petition. The trial court admitted the evidence after determining that there was sufficient foundation. On appeal to the Minnesota Court of Appeals, Starnes challenged the overall sufficiency of the evidence supporting his convictions, including dog-tracking evidence. Starnes, 2008 WL 5057083 at *6.

The Minnesota Court of Appeals observed that while dog-tracking evidence itself is insufficient to convict a defendant, it may be used to corroborate other evidence. Id. (citing McDuffie v. Minnesota, 482 N.W.2d 234, 237 (Minn. App. 1992)). In this case, the Minnesota Court of Appeals found sufficient corroborative evidence, which, coupled with the dog-tracking evidence, formed "a complete chain of reasoning" sufficient to uphold Starnes's convictions. Id. For instance, P.S.'s description closely matched Starnes, who was found a block and a half from the restaurant. In addition, P.S. testified regarding the attacker's use of a gun, the gun and gloves were found near Starnes in an area filled with thistles, Starnes had thistles on his clothing and P.S. identified the gun and gloves as those used in the attack. Id.

The Eighth Circuit Court of Appeals has observed that "the admission of evidence at a state trial will only form the basis for federal habeas relief when the evidentiary ruling 'infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process.'" Sera v. Norris, 400 F.3d 538, 547 n. 8 (8th Cir. 2005). There is no such showing here. Rather, this Court finds that the decision of the Minnesota Court of Appeals was not contrary to, nor involved the unreasonable application of the law, nor was it based on an unreasonable determination of the facts. Accordingly, the Court recommends the denial of this ground for which Petitioner seeks habeas relief.

### 3. Unlawful Stop and Detention

Petitioner alleges that his Fourth Amendment rights were violated by the stop, detention

12

and seizure of his person and arrest. (Petition at 5.) Respondent argues that Petitioner's Fourth Amendment claims were fully litigated below and are not cognizable on federal habeas review.

Pursuant to the Supreme Court's ruling in Stone v. Powell, 428 U.S. at 465, a federal habeas court considering a state prisoner's claim alleging a Fourth Amendment violation "should abstain from reviewing the state court records to determine if the state's factual findings are fairly supported by the record as a whole." Willett v. Lockhart, 37 F.3d 1265, 1270 (8th Cir. 1994), cert. denied, 514 U.S. 1052. The proper inquiry on review is whether "the State has provided an opportunity for full and fair litigation" of the claim. Id. (citing Stone v. Powell, 428 U.S. at 482). If the state affords an opportunity for full and fair litigation of Fourth Amendment claims, habeas relief is unavailable "whether legal or factual error in fact occurred." Chavez v. Weber, 497 F.3d 796, 801-02 (8th Cir.2007) (citing Willett, 37 F.3d at 1270.) Federal courts will review Fourth Amendment claims in habeas petitions only if either "the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system." Willett, 37 F.3d at 1273. The Eighth Circuit has described this as a two-part test and if the first prong is met, i.e., "either the state has a system available for raising Fourth Amendment claims or it does not," then the second prong "does not require a probing review of the state court record." Id. at 1271-72.

Applying the Willett test to Petitioner's claim, the Minnesota state courts provided a procedure by which Starnes could raise his Fourth Amendment claims. An evidentiary hearing was held as part of an omnibus hearing prior to Starnes's trial. See Starnes, 2008 WL 5057083 at *2. At that hearing, Starnes moved to suppress a variety of evidence pursuant to the Fourth Amendment. (See Mem. Supp. Mot. Suppress, Resp. Ex. 2.) The district court granted some of

13

Starnes's suppression motions and denied others. (See Findings of Fact, Conclusions of Law & Order, Resp. Ex. 4.) The district court's decision was subject to appellate review by the Minnesota Court of Appeals and Petitioner raised his Fourth Amendment challenges in his appeal. See Starnes, 2008 WL 5057083 at * 3-4. He further sought review with the Minnesota Supreme Court, which was denied. See id.

Petitioner does not claim that an "unconscionable breakdown" in the system occurred, nor does he allege any facts showing that he was prevented from raising his Fourth Amendment claims. Instead, Starnes reasserts his Fourth Amendment claims, including issues of probable cause and the veracity of the arresting officer's testimony. Pursuant to Stone v. Powell, however, this Court may not consider such claims as the Minnesota state courts provided Starnes with an adequate procedure for raising them. Moreover, Starnes fully availed himself of that procedure by asserting these very Fourth Amendment claims before the state trial court and the Minnesota Court of Appeals. Accordingly, habeas relief is unavailable and the Court recommends that this ground of relief be denied.

### 4. Judicial Misconduct

As the final ground upon which Petitioner seeks habeas relief, Petitioner argues that his due process rights were violated by the trial court. Specifically, he claims that the trial court unfairly denied a post-trial motion by not properly evaluating evidence and not allowing him to present certain arguments. (Petition at 5.) In response, Respondent argues that this ground of relief is without any legal basis and instead, "appears to be another instance where Starnes simply disagreed with the ruling that he got from the trial court, and wants it reversed, no matter whether it was correct or incorrect." (Resp.'s Mem. at 18.)

Petitioner raised this issue with the Minnesota Court of Appeals, which found that

Starnes's allegations that the trial court refused to hear his post-trial evidence or let him speak were not supported by the record:

> The district court demonstrated that it had read and considered his motions, listened to his arguments, and explained its decisions to him, as shown by more than 30 pages of transcript. In fact, the district court did a laudable job throughout these proceedings of ensuring that Starnes understood the proceedings. This claim is without merit.

Starnes, 2008 WL 5057083 at *7.

Not only has Petitioner presented no evidence that the trial court judge was actually biased or prejudiced against him, he has not shown any circumstances that would lead to a presumption of the existence of bias. See Taylor v. Hayes, 418 U.S. 488, 501-03 (1974) (judge had become embroiled in controversy with defense counsel); Ward v. Monroeville, 409 U.S. 57, 61-62 (1972) (judge had pecuniary interest in the outcome of the case). "An appellate court should be slow to reverse a case for the alleged misconduct of the trial court, unless it appears that the conduct complained of was intended or calculated to disparage the defendant in the eyes of the jury and to prevent the jury from exercising an impartial judgment upon the merits." La Barge Water Well Supply Co. v. United States, 325 F.2d 798, 802 (8th Cir. 1963) (citation omitted).

Petitioner has not shown that the state courts' decisions were contrary to or an unreasonable application of established precedent. There is no showing of bias or prejudice, nor any showing that would lead to a presumption of the existence of bias. Accordingly, the Court recommends the denial of this ground of relief.

### III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, IT IS

HEREBY RECOMMENDED that:

1. Petitioner's Petition for a Writ of Habeas Corpus (Doc. No. 1) be **DENIED**; and

2. This action be **DISMISSED WITH PREJUDICE**.

Dated: March 29, 2010

        s/Susan Richard Nelson

        SUSAN RICHARD NELSON
        United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **April 12, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.